CAPO, INC., Plaintiff–Appellant,

v.

DIOPTICS MEDICAL PRODUCTS, INC., Defendant–Appellee.

No. 04–1045.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 25, 2004.

Stephen D. Milbrath, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., of Orlando, Florida, argued for plaintiff-appellant. Of counsel was Herbert L. Allen.

Hal K. Litchford, Litchford & Christopher, of Orlando, Florida, argued for defendant-appellee. With him on the brief was Richard C. Swank. Of counsel was David S. Bloch, McDermott, Will & Emery, of Palo Alto, California.

Before NEWMAN, LOURIE, and DYK, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Capo, Inc. appeals an order of the United States District Court for the Middle District of Florida, dismissing Capo's declaratory judgment action against Dioptics Medical Products, Inc.[1] The district court held that, in exercise of its discretion, the action would not be accepted. We conclude that in refusing the action as it arose herein, the district court exceeded the discretionary authority provided by the Declaratory Judgment Act.

## BACKGROUND

Dioptics is in the business of producing "wear-over" sunglasses adapted to fit over or clip onto eyeglasses, and Capo is a wholesale marketer of sunglasses. Capo has been a customer and reseller of Dioptics products since 1988. In 2002 Capo developed its own design of wear-over sunglasses, and was preparing to market this product.

In September 2002 Mr. Henry Lane, the president of Dioptics, and Mr. Mark Ascik, the president of Capo, both attended a Wal–Mart suppliers meeting. During that meeting Mr. Lane told Mr. Ascik that Lane had seen Capo's intent-to-use trademark application for the mark "Suncovers" for wear-over sunglasses. The district court found that the conversation included the following: Lane told Ascik that Dioptics has a large number of issued patents and pending applications for designs of wear-over sunglasses, and that he wished to avoid legal dispute with a valued customer. Lane told Ascik that Dioptics vigorously enforces its patents against infringers. Ascik said that Capo had engaged patent counsel to aid in designing around the Dioptics patents and that Capo had a detailed non-infringement opinion from its counsel. Lane said that Capo's counsel could not know the content of Dioptics' pending patent applications.

Lane then is said to have placed several phone calls to Ascik, and on October 23, 2002 Lane left a voice mail message stating that if he did not hear promptly from Ascik, he would have to "presume that you are just ducking and racing forward to infringement;" Lane cautioned Ascik about "charging down a path here that's going to end up into a multi-million dollar lawsuit." Ascik then phoned Lane, and Ascik's affidavit states that Lane said that Dioptics had thirteen United States patents and would soon have forty, and that these patents covered all of the basic wear-over sunglass frame shapes. Lane said that Dioptics would have no choice but to defend its patents against infringement, and that he was sure he would win an infringe-

---

1. *Capo, Inc. v. Dioptics Med. Prods., Inc.*, No. 6:02–CV–1274–ORL–22KRS, 2003 WL 23853925 (M.D.Fla. Sept. 18, 2003).

ment suit. This conversation, on a speaker-phone, was corroborated by Capo's designer of the "Suncovers" product.

Capo then filed this declaratory judgment complaint, seeking a declaration of noninfringement of fourteen Dioptics design patents. Dioptics moved for dismissal of the declaratory action, on the ground that Mr. Lane could not have threatened suit for infringement because neither he nor anyone else at Dioptics had seen Capo's "Suncovers" product, and no one had analyzed it for infringement of any Dioptics patent. Dioptics declined to file a counterclaim for infringement, stating that it could not ethically do so, when it had not seen the Capo product. Capo responded by referring to Lane's reference to Dioptics' patents and his threats of suit for infringement. Ascik averred that he had "the very definite conviction that Dioptics would sue Capo for patent infringement, unless Capo withdrew the Suncovers product from the marketplace." Ascik stated that Lane's threats were intended to deter marketing of Capo's "Suncovers" product, by stating that Capo risked "a multimillion dollar lawsuit."

While this proceeding was pending Dioptics filed suit against Capo in the Northern District of California, alleging trade dress infringement and unfair competition by the "Suncovers" product. Dioptics' California complaint did not mention patent infringement, but it stated that the Capo "Suncovers" product is "substantially identical in overall appearance, design, and functionality, but inferior in style and performance, to the Dioptics 'SolarShield Fits Over Glasses.'" Capo pointed out in this suit that the California complaint is inconsistent with Dioptics' contention that it has not seen the Capo product and that there is no threat of suit. Thus Capo argued that there was an actual patent controversy, and a commercial need to resolve the controversy.

The district court found that an actual controversy existed between Capo and Dioptics, but declined to decide the "close question of whether Dioptics' President's statements created a reasonable apprehension that Dioptics would sue Capo for patent infringement." The court found that the dispute was not "sufficiently crystallized" for declaratory action because at the time the charges of infringement were made by Mr. Lane he had not seen Capo's product, Dioptics had not filed the compulsory counterclaim for infringement, and Dioptics stated that it had pending applications, not yet granted, that better covered the accused product. The court ruled that "in its considerable discretion under the Declaratory Judgment Act, it should nevertheless decline to exercise declaratory judgment jurisdiction in this particular case."

■ A district court's decision to stay or to dismiss an action seeking a declaratory judgment is reviewed under an abuse of discretion standard. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

## DISCUSSION

### I

■ The Declaratory Judgment Act provides:

> 28 U.S.C. § 2201. In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The purpose of the declaratory action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side."

*BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed.Cir.1993). *See also Cardinal Chemical Co. v. Morton Int'l Inc.,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (recounting the motivation in patent cases for recourse to the Declaratory Judgment Act).

■ In accordance with Article III of the Constitution, the Act requires existence of an actual controversy. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 887 (Fed.Cir.1992). More is needed than knowledge of or notice of an adversely held patent. *BP Chemicals,* 4 F.3d at 978. Declaratory justiciability of patent disputes requires both (1) a threat or other action by the patentee whereby the declaratory plaintiff has a reasonable apprehension that he will be sued for infringement, and (2) activity by the declaratory plaintiff that constitutes the alleged infringement or active preparation to conduct such activity. *Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398–99 (Fed.Cir. 1984). The standard is objective, and focuses on whether the patentee manifested the intention to enforce the patent, and would be reasonably expected to enforce the patent against the declaratory plaintiff. *Indium Corp. v. Semi–Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985). When these criteria are met the declaratory action should proceed. *Arrowhead Indus. Water Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988) ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more.")

■ The district court retains appropriate discretion to decline to accept a declaratory action, *Wilton,* 515 U.S. at 290, 115 S.Ct. 2137, to be exercised "in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration." *EMC Corp. v. No-rand Corp.,* 89 F.3d 807, 813–14 (Fed.Cir. 1996). The court must determine whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created." *EMC,* 89 F.3d at 814. However, when these objectives are served, dismissal is rarely proper, as illustrated in those circumstances in which dismissal was sustained. In *EMC* the court found that the declaratory action was brought in order to gain an advantage in licensing negotiations, and deemed that an improper purpose. *Id.* at 815. In *BP Chemicals* the court observed that dismissal of a declaratory judgment action was supported by the lack of joinder of necessary parties. 4 F.3d at 981.

■ There must be well-founded reasons for declining to entertain a declaratory judgment action. *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). Absent such reasons, precedent establishes that when there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute. *See Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1526 (Fed.Cir.1992) (declaratory judgment actions evidencing a conflict of sufficient immediacy and reality should be allowed to proceed).

In sum, Capo argues that this declaratory action should be accepted because the criteria of 28 U.S.C. § 2201 are met, and the district court's rejection of the action was not objectively justified. Capo states that if the dismissal is sustained, Dioptics' president can continue his threats, inhibit Capo's commercial marketing, and escape resolution of the infringement issue. Capo states that Dioptics' refusal to counterclaim for infringement should have been treated as a concession of non-infringe-

ment, not a successful tactic to avoid judicial process. Dioptics responds that there is no absolute right to a declaratory action, that Capo's suit was both premature and unripe, and that the district court acted within its discretionary authority. Dioptics states that Mr. Lane could not have threatened suit against a product he had never seen, and thus that there could not be an actual controversy, whatever words were said. Dioptics states that it could not, under Fed.R.Civ.P. 11, file an infringement suit against a product it had not analyzed for infringement.

## A

■ Dioptics does not deny that Mr. Lane, as president of Dioptics, made the reported statements concerning suit for patent infringement unless Capo abandoned its marketing of the "Suncovers" product. Although the courts have recognized that "jawboning" and aggressive negotiation may not always establish a justiciable controversy, *see Shell Oil,* 970 F.2d at 889, the Dioptics threats were not aimed at negotiation, but at impeding a competitor's commercial activity. Lane's threats created the apprehension of suit, and Ascik's apprehension of suit was reasonable, for Dioptics knew that Capo had entered the marketplace with the accused product. Capo is not required to verify the extent to which the accuser has studied the accused product before acting to declare its commercial rights.

Dioptics' argument that it could not have ethically filed suit at that time may be relevant to whether Dioptics acted responsibly, but it is irrelevant to whether the patentee's threats of suit instilled a reasonable apprehension of suit. Although Dioptics now characterizes Lane's words as "cursory," the record well supports the conclusion that Capo had the objectively reasonable apprehension that it would be sued by Dioptics for patent infringement. This objective apprehension was deliber-

ately and intentionally created by the president of Dioptics. It is irrelevant whether Dioptics had adequately investigated the basis of its threats, if they created the requisite objective apprehension. *See BP Chemicals,* 4 F.3d at 979 ("it is the objective words and actions of the patentee that are controlling"); *Arrowhead,* 846 F.2d at 736 (determining whether the patentee's conduct, objectively viewed, shows the intent to enforce the patent). This is the obverse of the more usual case in which the patentee uses carefully selected phrases in order to avoid becoming a declaratory defendant. Mr. Lane minced no words, left no doubt, and advised Ascik that Dioptics had already filed three lawsuits against others for patent infringement.

We conclude that the district court clearly erred in declining to find that Capo had a reasonable apprehension of suit.

## B

■ The district court also gave weight to Dioptics' failure or refusal to make the compulsory counterclaim for infringement. In an action for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived. *Vivid Techs., Inc. v. Am. Sci. & Eng'g Inc.,* 200 F.3d 795, 802 (Fed.Cir.1999). Dioptics cannot avoid a declaratory action by refusing to file the counterclaim. We take note that the magistrate judge extended the time for filing the counterclaim. Capo provided samples of the "Suncovers" product, and sought through discovery to ascertain which patents Dioptics was asserting against the product; Dioptics presented no response other than that it "has no opinion regarding whether Specimen 2 infringes any of the design patents in suit at this time."

We conclude that the district court clearly erred, in its interpretation of its discretion, in giving weight to Dioptics'

actions with respect to the compulsory counterclaim.

## C

The district court also gave weight to Dioptics' argument that it had pending patent applications that upon issuance would strengthen its case for infringement. However, Capo is entitled to resolution of the infringement accusations already made, for the patents that already exist. The possibility of future patents is irrelevant to present rights and liability. Having given notice of infringement and having placed Capo in apprehension of suit if Capo proceeded with its commercial activity, Dioptics can not avoid resolution of the present controversy by stating that its position would be better supported after still-unknown patents are later obtained.

Dioptics states that this case was filed by Capo solely for the improper purpose of gaining access to Dioptics' forty pending patent applications. Capo vigorously disputes this accusation, stating that Dioptics threatened Capo with present and future infringement, and placed the forty applications before Capo and before the court. While we agree with Capo that Dioptics placed its patent applications into the controversy, under these circumstances, however, it would be a valid exercise of judicial discretion to decline to permit discovery concerning these unissued patents, thereby preventing any prejudice to Dioptics.

We conclude that the district court erred in giving weight to the possibility of future liability as to future patents, as a reason for declining to resolve Capo's present liability as to the fourteen issued patents of the general accusation.

## II

There is indeed discretion in the district court with respect to declaratory actions. As the Court explained in *Wilton*, the Declaratory Judgment Act grants district courts discretion "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." 515 U.S. at 289, 115 S.Ct. 2137. In *Wilton* the Court declined to "delineate the outer boundaries of that discretion," while recognizing that such boundaries exist. *Id.* at 290, 115 S.Ct. 2137. The field of patent litigation has explored such boundaries in pragmatic detail, for such litigation is particularly adapted to declaratory resolution. As was early recognized by Learned Hand, a patent can be a "scarecrow." *Bresnick v. U.S. Vitamin Corp.*, 139 F.2d 239, 242 (2d Cir.1943).

In this case the district court's decision leaves Capo unable to resolve its accused liability for patent infringement if it proceeds to market the "Suncovers" product. In *Arrowhead* the court referred to such extra-judicial patent enforcement as "a type of the sad and saddening scenario that led to enactment of the Declaratory Judgment Act." 846 F.2d at 734. Professor Borchard explained that declaratory justiciability is needed "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Edwin Borchard, *Declaratory Judgments* 299 (2d ed. 1941). There must be a sound basis for refusing to adjudicate an actual controversy, for the policy of the Act is to enable resolution of active disputes. "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir.1993).

We conclude that the dismissal is inconsistent with these objectives. The refusal to exercise jurisdiction leaves Capo "helpless and immobile so long as the patent owner refuse[s] to grasp the nettle and sue." *Arrowhead*, 846 F.2d at 735. In patent cases the court's refusal to accept a declaratory action also raises issues of public interest, for patent rights are of competitive impact as well as innovation incentive. The present dispute has "immediacy and reality," *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the criteria of Article III. Resolution of this dispute is within the court's capability, and it is the district court's responsibility to resolve it. Declining to do so is an abuse of discretion. *See Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 674 (Fed.Cir.1991).

We conclude that the dismissal was improperly granted. The dismissal is vacated, and the case is remanded for further proceedings.

*VACATED AND REMANDED*